UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MONTE CALLAWAY,

          Plaintiff,         2:11-cv-00885-TC

          v.               ORDER

STEVE SHELTON, et al.,

          Defendants.

COFFIN, Magistrate Judge.

    Plaintiff, an inmate in the custody of the Oregon Department of Corrections, filed a complaint alleging that defendants violated his rights under the Eighth and Fourteenth Amendments and the Americans with Disabilities Act (ADA) by denying him facial reconstructive surgery so that he can be fitted for dentures. Plaintiff seeks damages and injunctive relief. Defendants now move for summary judgment (#123).

1 - ORDER

The facts giving rise to plaintiff's claims are set forth in the parties' briefs and supporting documents and need not be repeated in detail.  In short, prior to being admitted to ODOC, plaintiff shot himself in the jaw in a suicide attempt and underwent extensive facial reconstructive surgery. Additional surgeries were planned but did not take place because plaintiff lost his coverage under the Oregon Health Plan upon his incarceration. Upon his admission to ODOC, on December 11, 2008, plaintiff was seen by medical staff and given a soft food diet due to his medical condition.

In April, 2009, plaintiff requested to be provided with dentures and was seen by Dr. Harrell at the Eastern Oregon Correctional Institution.  Based on his opinion that dentures might not be able to be fabricated for plaintiff in his current condition, Dr. Harrell referred the matter to the Therapeutic Level of Care Committee (TLCC).[1]  The TLCC approved the referral of plaintiff to a specialist for evaluation.

In June, 2009, plaintiff was examined by Dr. James Eyre, an oral and maxillofacial surgeon.

In June, 2009, the TLCC reconvened to consider plaintiff's condition in light of Dr. Eyre's diagnosis and

---

[1]The TLCC is a committee of practitioners who review individual cases for the appropriateness of treatment, a second opinion, or approval or denial of coverage.

findings.   The TLCC denied plaintiff's request for facial reconstructive surgery and dentures stating:

> [i]t is impossible to manufacture dental prostheses for this patient with the facial structures in the present condition.   ODOC generally does not provide facial reconstructive surgery, which is considered mainly for cosmetic purposes.

Affidavit of Steven Shelton, M.D. (#125) ¶ 41.

Plaintiff's condition was reviewed again by the TLCC in January, 2010, and it affirmed its previous decision denying facial reconstructive surgery because it was "mainly for cosmetic purposes." *Id.* att. 5 at p. 151.

Absent a significant change in plaintiff's condition, ODOC will not provide plaintiff with reconstructive surgery in the future. *Id.* at ¶47.

Plaintiff has no teeth, no lower gum line and what is left of his upper gum line does not touch what remains of his jaw-line.   Both upper and lower chewing surfaces are distorted and he only has a partial tongue.   He has an approximately one centimeter oral opening.   Eyre Declaration (#126) ¶ 7. Plaintiff cannot chew solid food and cannot wear dentures.   It is likely that he could be fitted for dentures but only after extensive, costly surgical intervention. *Id.*, p. ¶¶ 8, 9.

Plaintiff alleges that he suffers a host of medical problems because of his inability to chew, including digestive problems, constipation, diarrhea, painful bleeding

hemorrhoids, bloody stool, an anal tear, difficulty urinating, severe choking and vomiting and painful cuts and scrapes inside his mouth, back pain and mental and emotional trauma. Plaintiff further alleges that due to his inability to chew he is unable to maintain a sufficient caloric and nutritional intake necessary to maintain his health and has lost weight.

Defendants now move for summary judgment alleging:

> First, plaintiff cannot establish a genuine issue of material fact as to whether he has a serious medical need for facial reconstructive surgery so that he may be fitted for dentures *or* that any of the individually-named defendants were deliberately indifferent to that need when they denied it. Second, plaintiff's ADA claim fails to state a claim for relief. Third, plaintiff's equal protection claim fails to state a claim for relief. Fourth, defendants are qualifiedly immune from damages. Finally, plaintiff cannot establish that he is entitled to injunctive relief. Accordingly, this Court should grant defendants' motion for summary judgment and dismiss plaintiff's claims with prejudice.

Motion for Summary Judgment (#123) p. 1-2.

Eighth Amendment:

Plaintiff alleges that defendants' refusal to provide him with facial reconstructive surgery and dentures violates his right under the Eighth Amendment to be free from cruel and unusual punishment.

In order to prevail on a 42 U.S.C. § 1983 claim that medical treatment has been denied or inadequately rendered, a prisoner must establish that there has been a "deliberate

indifference to [his] serious medical needs." <u>Estell v.
Gamble</u>, 429 U.S. 97, 104 (1976); <u>Lopez v. Smith</u>, 203 F.3d
1122, 1131 (9th Cir. 2000); <u>see also</u>, <u>Clements v. Gomez</u>, 298
F.3d 898, 904 (9th Cir. 2002).

A determination of "deliberate indifference" requires an
examination of two elements: 1.) The seriousness of the
prisoner's medical needs, and 2.) The nature of the
defendant's response. <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-
60 (9th Cir. 1992) (overruled on other grounds by <u>WMX Techs.,
Inc v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997). To find
deliberate indifference, "[a] defendant must purposefully
ignore or fail to respond to a petitioner's pain or possible
medical need." <u>Id</u>. at1060.

Whether a medical condition is serious is ordinarily a
question left to physicians, <u>Brownell v. Figel</u>, 950 F.2d 1285,
1291 (7th Cir. 1991) <u>Davis v. Jones</u>, 936 F.2d 971, 992 (7th
Cir. 1991), but in general a medical condition is serious if
it is life threatening or poses a risk of needless pain or
lingering disability if not treated at once. <u>Id</u>., 936 F.2d at
972; <u>see also</u>, <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994).

"'Dental care is one of the most important medical needs
of inmates.'" <u>Hunt v. Dental Dept.</u>, 865 F.2d 198, 200 (9th Cir.
1989) (<em>quoting</em> <u>Ramos v. Lamm</u>, 639 F.2d 559, 576 (910 Cir.
1980). "Accordingly, the {E]ighth Amendment requires that

prisoners be provided with a system of ready access to adequate dental care." *Id.* (citing <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1253 (9th Cir. 1982). There is no *per se* constitutional requirement that inmates be provided access to dentures. In order to establish a Eighth Amendment violation the inmate must establish that the failure to provide dentures or other medically acceptable treatment could result in further significant injury or the unnecessary and wanton infliction of pain. *See*, <u>Hunt</u>, 865 F.2nd 198 (issue of fact existed where inmate alleged that the loss of his dentures was causing him severe pain and permanent physical damage); *see also*, <u>Farrow v. West</u>, 320 F.3d 1235, 1244-45 (11th Cir. 2003); <u>Wynn v. Southward</u>, 251 F.3d 588, 593 (7th Cir. 2001).

Defendants have presented the affidavit of Dr. James Eyre which states: "The injury to [plaintiff's] face and mouth does not pose any risk to his health and safety absent further surgical intervention ... [T]he prior reconstructive surgery stabilized [Plaintiff's] condition and there is no risk of further degeneration. [Plaintiff] will be able to maintain sufficient caloric and nutritional intake through his soft food and Ensure diet. Declaration of James Eyre, M.D., D.M.D. (#226) ¶¶ 11-12.

In addition, Defendant Shelton, Medical Director of ODOC Health Services, states:

"[Plaintiff] does not suffer from a serious medical need for dentures or jaw and facial reconstruction. The failure to treat [plaintiff's] condition does not result in further significant injury or unnecessary pain Plaintiff's self-inflicted condition prevents him from chewing and eating a diet of hard solid foods and smiling. He does not suffer from chronic or severe pain and he has been able to maintain his weight and health through proper nutrition."

Affidavit of Steve Shelton, M.D. (#125) ¶ 49.

Defendants argue that plaintiff's nutrition and weight have been maintained through a soft diet with appropriate supplements. Further, "[a]lthough plaintiff may suffer from medical conditions in addition to the injury to his face and mouth, he cannot demonstrate a causal connection between those conditions and defendants' decision to deny facial reconstructive surgery." Memorandum in Support (#124) p. 10.

Plaintiff moves to strike paragraph 11 of Dr. Eyre's affidavit and paragraph 47 of Dr. Shelton's affidavit arguing that they made contradictory statements at their deposition.[2]

At his deposition, Dr. Eyre testified that "teeth in the native bone helps maintain the alveolar bone. If you don't have teeth, over time your alvelor bone will reabsorb." Snyder Declaration (#161) Exhibit 6 at p. 54. When asked whether he had concerns about muscle atrophy, he replied

---

[2]Plaintiff alleges that the parties have conferred pursuant to LR 7-1 and that defendants "do not oppose these objections." Plaintiff's Supplemental Memorandum (#160) p. 2

"[a]ny muscle that - it's use it or lose it."  *Id*. at p.56.

Plaintiff also disputes Dr. Eyre's conclusion regarding plaintiff's ability to maintain sufficient caloric intake by pointing to Dr. Eyre's deposition testimony that he had no independent knowledge of plaintiff's actual nutritional status. *Id* at p. 21. Dr. Eyre also testified that he had no knowledge of plaintiff's digestive problems. *Id*. at 59.

In sum, Dr. Eyre's deposition testimony indicates that the conclusion stated in his affidavit that plaintiff would be able to maintain adequate nutrition and that his injuries do "not pose any risk to [plaintiff's] health and safety" is speculative and that a material issue of fact exists in this regard.

Plaintiff also disputes Dr. Shelton's statement that plaintiff has been provided "nutritional supplements such as Ensure" by pointing out that nutritional supplements were not ordered until after plaintiff filed suit and was evaluated by Hoyeol Yang, M.D., a gastroenterologist, whose chart notes stated as his assessment: 1.) Bowel habit changes with abdominal pain and rectal bleeding.  Rule out colonic neoplasm other than functional problem with hemorrhoid; and 2.) Weight loss in part related to poor oral intake due to the injury to his jaw and mouth. Snyder Declaration (#161) Exhibit 43, p. 3.

In addition, the opinions that plaintiff is able to

maintain sufficient caloric intake to maintain his weight is called into question by the fact that on September 19, 2011, plaintiff's chart notes indicate that he weighed 151 pounds - almost 30 pounds less than the 180 pounds he weighed on the date he was incarcerated. Snyder Declaration (#161) Exhibit 49.

I find that this conflicting evidence and in particular Dr. Eyre's deposition testimony regarding bone re-absorption and muscle atrophy creates a material issue of fact as to whether plaintiff's condition is one that could result in further significant injury or the unnecessary and wanton infliction of pain.

Defendants' decision not to provide plaintiff with surgery in order to enable him to be fitted for dentures under these circumstances implicates a material question of fact as to whether they acted with deliberate indifference to plaintiff's serious medical need.

Defendants' motion as to plaintiff's Eighth Amendment claim is thus denied.

<u>Americans with Disabilities Act:</u>

Plaintiff alleges that ODOC's failure to provide him with facial reconstructive surgery and dentures violated the ADA. Complaint (#2) p. 7.

To state a claim for disability discrimination under

Title II of the ADA, plaintiff must establish four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. Thompson v. Davis, 295 F.3d 890. 895 (9th Cir. 2002) (citing Weinreich v. L.A. County Metro, 114 F.3d 976, 978 (9th Cir. 1997)).

Thus, in order to state a claim under the ADA, plaintiff must establish that he was excluded from participating in ODOC's services, programs or activities "by reason of his disability." See, Bryant v. Madigan, 84 F.3d 246, 248-49 (7th Cir. 1996).

In this case, plaintiff only alleges that he is being denied adequate medical care – not that medical care is being withheld by reason of his disability. Therefore, defendants are entitled to judgment as a matter of law as to plaintiff claim under the ADA.

Equal protection:

Plaintiff alleges that defendants' decision not to

provide him with facial reconstructive surgery violates his right to equal protection under the Fourteenth Amendment because ODOC has "given reconstruction treatment to other inmates who reflected plaintiff's medical circumstances." Complaint (#2) p. 6.

The Equal Protection Clause requires that state laws be applied uniformly to situations that cannot be reasonably distinguished. Baxtrom v. Herold, 383 U.S. 107, 111 (1966); Mlikotin v. City of Los Angeles, 643 F.2d 652, 654 (9th Cir. 1981). General rules that apply evenhandedly to all persons within the jurisdiction unquestionably comply with this principle. Jones v. Helms, 452 U.S. 412, 423 (1981). In addressing an equal protection claim, the first step is determining the proper level of scrutiny. San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 17 (1973). Traditionally, equal protection analysis involves one of two standards, strict scrutiny or rational basis scrutiny. The strict scrutiny standard is only applied if legislation discriminates against a suspect class or infringes upon a fundamental right. Nordlinger v. Hahn, 505 U.S. 1, 10 (1992); Madrid v. Gomez, 150 F.3d 1030, 1040 (9th Cir. 1998). If a particular classification does not involve a suspect class or a fundamental right, the legislation is subject to a rational basis review. Nordlinger v. Hahn, supra, 505 U.S. at 10.

There is a presumption that a classification is constitutional unless it is based upon a suspect classification or impinges upon a fundamental right. Harris v. McRea, 448 U.S. 297, 322 (1980). A classification subject to rational basis review must be sustained if any state of facts reasonably may be conceived to justify it. McGowan v. Maryland, 366 U.S. 420 (1961); Lipscomb by and through DeFehr v. Simmons, 962 F.2d 1374, 1380 (9th Cir. 1992).

In this case, plaintiff has not established that he is a member of a suspect class or that entitlement to dentures is a fundamental right. Therefore, I find that plaintiff's claim is subject to rational basis review.

Defendant Shelton, a medical doctor and Medical Director for ODOC Health Services, explained the TLCC's basis for its decision as follows:

> The primary rationale behind the TLCC's decision was that [plaintiff's] medical condition was stable and not threatening his overall health. [Plaintiff] did not suffer chronic pain as a result of his injury which could be altered by further surgery. [Plaintiff] was requesting surgery so he could wear dentures and consume solid foods "like other inmates." ODOC would not approve surgery solely so an inmate could wear dentures. And although [plaintiff] would likely obtain cosmetic benefits from the surgery, ODOC does not consider cosmetic surgery - surgery that improves the appearance of a physical feature, which would be plaintiff's face and mouth - medically necessary.
>
> The TLCC considered other factors as

12 - ORDER

well. {plaintiff] has already had extensive
surgery and is medically stable.   Further
extensive and complex surgery would be
required to attempt to fit [plaintiff] with
dentures.   There were, and still are, risks
inherent in performing such invasive surgery,
and the outcome to create a jaw and mouth
functionally capable of chewing with dentures
is unsure. And even if the surgery was
successful, chewing with dentures could remain
problematic because of the tenderness of the
structures of the grafted tissue over the
reconstruction and under any denture.   Given
the alternatives for [plaintiff] to maintain
medical health – a soft diet – such risks
associated with surgery were not warranted.

The TLCC also considered the fact that
the cost of the procedure was, and still is,
high relative to the quality of life benefits
to [plaintiff[. Moreover, this procedure could
be done at any time in the future without
changing the potential outcome. [Plaintiff]
had, at the time, less than six years
remaining on his sentence.   Therefore, he
could obtain the surgery after he was
released.

Based on this combination of factors, it
was the medical opinions of the practitioners
on the TLCC that the costs and risks of
surgery outweighed [plaintiff's] desire to be
able to chew solid foods with dentures during
the remaining time in ODOC custody.   The
practitioners on the TLCC were unanimous on
their opinion regarding plaintiff's case.
Accordingly, the TLCC denied the surgery and,
as a result, denied plaintiff's request for
dental prostheses.

Affidavit of Steven Shelton, M.D. (#125) ¶¶ 42-45.

I find that Dr. Shelton's explanation of the TLCC's

rationale for its decision constitute facts that

"reasonably may be conceived to justify it." <u>McGowan v.</u>

13 - ORDER

<u>Maryland</u>, *supra.* The fact that the committee may have reached a different conclusion regarding other inmates in arguably similar medical circumstances does not make out a Fourteenth Amendment equal protection violation.

Defendants are entitled to judgment as a matter of law as to plaintiff's equal protection claim.

<u>Qualified immunity:</u> Defendants move to dismiss plaintiff's claims for damages on the ground that they did not violate plaintiff's clearly established constitutional rights and are therefore entitled to qualified immunity from liability for damages.

Government officials are shielded from liability for damages when his or her conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982); <u>Act Up! / Portland v. Bagley</u>, 988 F.2d 868 (9th Cir. 1993). Thus officials are entitled to qualified immunity when they make decisions that, even if constitutionally deficient, reasonably misapprehend the law governing the circumstances they confronted. <u>Brossen v. Haugen</u>, 543 U.S. 194, 202 (2004).

> Until recently courts considering an official's claim of qualified immunity followed the two-step protocol established in *Saucier v. Katz*, 533 U.S. 194 (2001), which required us first to determine whether the defendant violated a constitutional right and

then to determine whether that right was
clearly established. *See*, *Pearson v. Callahan*,
555 U.S. ____, 129 S.Ct. 808, 818 (2009)
(overturning *Saucier* in part). In *Pearson v.
Callahan*, the Supreme Court reversed this
earlier rule and gave courts discretion to
grant qualified immunity on the basis of the
"clearly established" prong alone, without
deciding in the first instance whether any
right had been violated. *Id.* Thus, we may
grant qualified immunity if 'the facts that a
plaintiff has alleged or shown [do not] make
out a violation of a constitutional right' or
if 'the right at issue was [not] clearly
established at the time of the defendant's
alleged conduct.' *Id.* At 816, 818 (internal
citations omitted)."

James v. Rowlands, 606 F.3d 646 (9th Cir. 2010).

To determine whether a right is clearly established,

the relevant inquiry is "whether it would be clear to a

reasonable officer that his conduct was unlawful in the

situation he confronted. *Saucier*, 533 U.S. at 202.

In this case, the record reflects that defendants

carefully and deliberately considered plaintiff's request

for reconstructive surgery and dentures and made a

reasoned decision to deny the request. I find that it

would not have been clear to a reasonable correctional

physician that denying plaintiff extensive facial

reconstructive surgery under the circumstances of this

case would violate plaintiff's statutory or

constitutional rights. Therefore, even if the decision

did violate plaintiff's rights, defendants are entitled

to qualified immunity from liability for damages and are
entitled to judgment as a matter of law as to plaintiff's
claims for damages.

Injunctive relief:   Plaintiff seeks injunctive relief by
way of an order compelling "defendants to recommend and
provide the necessary treatment and/or reconstructive
surgery by qualified personnel so Plaintiff may be
provided with dentures. Complaint (#2) p. 8.

Defendants argue that because their "decision to
deny plaintiff surgery did not violate his rights, and
because plaintiff requested relief exceeds the scope of
the Prison Litigation Reform Act (PLRA), his claims for
injunctive relief should be denied." Memorandum in
Support (#124) p. 15.

I have found above that there are material issues of
fact as to whether defendants were deliberately
indifferent to plaintiff's serious medical needs.

The PLRA prohibits prospective equitable relief with
respect to prison conditions unless "the court finds that
such relief is narrowly drawn, extends no further than
necessary to correct the violation of the Federal right,
and is the least intrusive means necessary to correct the
violation of the Federal right." 18 U.S.C. § 3626(1)(A).

Defendants' apparent argument that the court could

16 - ORDER

not fashion appropriate injunctive relief to remedy the constitutional violation, if any, in this case is not convincing. Defendant's motion for summary judgment as to plaintiff's request for injunctive relief is denied.

Summary: Defendants' Motion for Summary Judgment is allowed as to plaintiff's ADA and equal protection claims and as to plaintiff's claims for damages. Defendants' motion is denied as to plaintiff's claim for injunctive relief.

The Clerk is directed to set a telephone status conference to determine scheduling at the parties earliest convenience.

IT IS SO ORDERED

DATED this 28 day of January, 2014.

_____
Thomas M. Coffin
United States Magistrate Judge